**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WANDA OTERO-RIVERA, | CIVIL NO. 14-1661 |
| Plaintiff | CIVIL RIGHTS; TITLE VII |
| v. | |
| PFIZER PHARMACEUTICALS, LLC | PLAINTIFF DEMANDS TRIAL BY JURY |
| Defendants | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** the Plaintiff, and through the undersigned attorneys, very respectfully avers and prays as follows:

### I. INTRODUCTION

1. This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§'s 2000e *et seq.*; Commonwealth Law 100 of June 30, 1959 as amended, 29 L.P.R.A. §§'s 146 *et seq.;* Commonwealth Law 69 of July 6, 1985 as amended, 29 L.P.R.A. 1321 *et seq.;*

### II. JURISDICTION & VENUE

2. The jurisdiction of this Honorable Court is hereby invoked under 28 U.S.C. § 1331 and § 1343(3), since the action arises

under the laws of the United States. Supplemental Jurisdiction is also invoked under 28 U.S.C. § 1367. The state claims are related to the federal claims in this action, since they form part of the same case or controversy under Article III of the United States Constitution as provided by 28 U.S.C. § 1367(a). Venue lies on this district pursuant to 28 U.S.C.A. § 1391(a)(2) because the instant claims arose in the district of Puerto Rico.

### III. THE PARTIES

3. Plaintiff Wanda Otero-Rivera(Hereinafter "Otero-Rivera" or "Plaintiff") is a resident of the Commonwealth of Puerto Rico and the victim of the Defendant's discriminatory acts.

4. Defendant Pfizer Pharmaceuticals, LLC (Hereinafter "Pfizer" or "Defendant") is Limited Liability Company created under the laws of Delaware, with its principal place of business in the Municipality of Vega Baja, Puerto Rico. Pfizer is Plaintiff's employer who illegally and discriminatorily refused to grant her a promotion due to her gender. Pfizer has more than five hundred employees in its payroll.

### IV. THE FACTS

5. The Defendant owns a pharmaceutical manufacturing plant on Vega Baja, Puerto Rico.

6. Plaintiff started working for Pfizer as a chemistry operator on the month of March of 1993.

7. On March 28, 2007, Plaintiff was assigned a day shift and was removed from rotating shifts since she was assigned to work with the security program of the chemistry plant section of the factory.

8. This new assignment was due to the fact that said security program was having problems.

9. The assignment of Plaintiff was supposed to be a temporary one, but she was kept working the day shift during the time that the facts mentioned in this Complaint took place.

10. On or around that time, Mrs. Ivette Bergollo, who was the supervisor in charge of the security program of the chemistry plant was transferred to the position of supervisor at the pharmacy department of the company at her request.

11. At that point every single issue related to security at the chemistry plant of the factory was in charge of the Plaintiff, who was named "champion" of security of that area by her supervisor by Mrs. Maina Torres.

12. Plaintiff worked hard during that time and she was able to reduce the amount of incidents occurring in that area and to improve the morale of the operators with regards to the security of their work stations.

13. Due to a restructuring plan going on at Pfizer, one of the managers who was going to be terminated, was instead transferred to a newly created supervisory position called "Facility and

Safety Specialist" to perform the duties that Plaintiff was doing since the transfer of Mrs. Bergollo.

14. Since this manager, Mr. Carlos Juncos, was supposed to start working at his new position at the beginning of the year 2008, Plaintiff continued running the security operation of the chemistry plant while at the same time training Mr. Juncos in that area.

15. Once Mr. Juncos assumed his duties as "Facility and Safety Specialist" in the year 2008, Plaintiff continued working in security, doing inspections in the work areas to maintain them free of hazards and in preparation for security audits. She also was tasked with coordinating with the engineering and projects area so that preventive maintenances could be performed in the least amount of time possible.

16. On January of 2009, Mr. Juncos was again given a managerial position and the position of "Facility and Safety Specialist" was left vacant.

17. The job posting for that vacancy was published on March of 2009.

18. Plaintiff asked Mr. Juncos if there was any other employee who had been identified by the upper management to fill that position and he said that he didn't know; although he said that it was possible that a manager who worked at Pfizer's recently shut down plant in Arecibo would be chosen for the position.

19. Plaintiff told him that she was going to apply for that position and also for the position of API Team Leader(Chemical Plant Supervisor) for which eight(8) openings had also been posted recently.

20. Mr. Juncos asked her if she had the minimum qualifications for those positions and Plaintiff replied that she did, since both vacancies requested at least a Bachelor's Degree and she had one in Biology.

21. During that same conversation Mr. Juncos told Plaintiff that the upper management had decided to return her to rotate shifts and positions at the plant and to assign another operator to the duties that she was currently performing.

22. In addition, she had to train said operator in the duties performed in the security detail of the chemistry plant before returning to her rotating shifts.

23. During that same week, Plaintiff spoke with Mrs. Maina Torres, who was Director of the Chemistry area of the plant, and asked her if it was true what Mr. Juncos had told her regarding the fact that she had to train a new operator to perform her current duties and that she was going to be assigned to rotate shifts, which Mrs. Torres confirmed.

24. Plaintiff then asked her if somebody had applied for the position of Facility and Safety Specialist, to which Mrs. Torres replied that only Mr. Josue Armaiz had done so.

25. Mr. Arnaiz was the person that Mr. Juncos had mentioned as his possible replacement.

26. Plaintiff proceeded to inform Mrs. Torres that she was going to apply for that position and also for the available positions of API Team Leader(Chemistry Plant Supervisor).

27. Mrs. Torres acted surprised that Plaintiff had a Bachelor's Degree, but nonetheless told her that she could apply for those positions if she wanted to.

28. Plaintiff did apply for both of those positions.

29. For the position of Facility and Safety Specialist she was interviewed by both Mr. Eric Prado, from the Engineering Department and by Mrs. Maina Torres at the Human Resources office.

30. Plaintiff was told that after those interviews took place a decision as to who was going to be chosen would be taken by management and informed to her.

31. On April 22, 2009 Plaintiff was informed via e-mail that another person was chosen for the position of Facility and Safety Specialist. The person chosen for that position was Mr. Josue Armaiz.

32. As to the position of ATI Team Leader, during the month of March Plaintiff attended three(3) different interviews.

33. Plaintiff was informed after the third interview that a decision about what employees were going to being chosen for the

eight(8) available positions of API Team Leader would occur in the next couple of days.

34. After several months passed without a decision being taken, Plaintiff was informed by Mrs. Lissette Guerra that Management had decided to also interview some of the plant's "Area Leaders" for the available API Team Leader positions.

35. Out of those "Area Leaders" who were interviewed, only one(1) of them had the minimum requirements for the position of ATI Team Leader.

36. On June 8, 2009, Plaintiff was informed via e-mail that she wasn't chosen for any of the eight(8) available ATI Team Leader positions at the Vega Baja plant.

37. Of the eight(8) individuals selected for that position, originally only two(2) were female.

38. When one of those females rejected the job offering another male, Mr. Raymond Ortiz, was selected instead.

39. Of the seven(7) male employees that were selected, only three(3) had the minimum requirement of having a bachelor's degree.

40. In addition, the male employee who was chosen after a female employee rejected the API Team Leader position, Mr. Raymond Ortiz, had zero experience as a supervisor.

41. That fact is an important one, since the Defendant's reason to deny Plaintiff one of the eight(8) available positions was her alleged limited experience as a supervisor.

42. Also, and as stated before, of the seven male employees who were chosen four(4) did not have a bachelor's degree so they clearly didn't possess the minimum requirement for the position.

43. But instead of rejecting them outright, the Defendant gave these male employees those positions under the agreement that they complete a bachelor's degree in a term of seven years.

44. Even though Plaintiff complied with all of the requirements for the position of API Team Leader, since she had a bachelor's degree in Biology and had performed supervisory duties related to the security of the chemistry area of the plant, male employees who were less qualified were chosen over her.

45. In fact, at the time that Plaintiff applied and was interviewed for the position of the API Team Leader 68% of the supervisory positions and 70% of the Team Leader positions at the Defendant's plant in Vega Baja were being occupied by male employees, which showed Pfizer's clear discrimination pattern.

46. On February 10, 2010, Plaintiff filed a Charge of Discrimination with the San Juan Office of the Equal Employment Opportunity Commission.

47. On April 15, 2014, the Equal Employment Opportunity Commission issued a <u>Determination</u> concluding that there was reasonable cause to believe that Plaintiff was indeed discriminated because of her gender when she was not chosen to any of the API Team Leader Positions.

48. On July 21, 2010, the Equal Opportunity Employment Commission issued Plaintiff a Right to Sue Letter.

49. Plaintiff has suffered and continues to suffer great mental anguish due to the discriminatory acts of the Defendant's employees. She has been humiliated, embarrassed and depressed after not being chosen for a position for which she was qualified, while being passed over by several male employees who were less qualified than she was.

50. In addition, as a result of the Defendant's refusal to choose Plaintiff for the position of API Team Leader due to her gender, she has not received at least $30,000 per year which is the difference in salary and benefits between her current position in Pfizer and what she would receive as an API Team Leader.

51. All the injuries, mental anguish and loss of wages and benefits suffered by the Plaintiff were caused by the Defendant's employees and/or its agents.

### V. FIRST CAUSE OF ACTION

#### (Compensatory Damages under Title VII)

52. The allegations contained in paragraph No. 1 through No. 51 of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

53. The facts set forth in this Complaint constitute a violation of Plaintiff's rights under the Title VII of the Civil

Rights Act of 1964; 42 U.S.C. §§'s 2000e *et seq*. due to her gender.

54. As a result, compensatory damages for the emotional distress, pain and suffering, mental anguish and loss in her enjoyment of life in an amount of not less than $500,000 under Title VII against the Defendant are requested.

## VI. SECOND CAUSE OF ACTION
### (Punitive Damages under Title VII)

55. The allegations contained in paragraph No. 1 through No. 54 of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

56. The facts set forth in this Complaint constitute a violation of Plaintiff's rights under the Title VII of the Civil Rights Act of 1964; 42 U.S.C. §§'s 2000e *et seq*. due to her gender.

57. Punitive Damages in an amount of not less than $500,000 under Title VII are requested since the Defendant has engaged in intentional discrimination when refusing to give Plaintiff one of the API Team Leader positions over less qualified male employees and it did so with malice and/or with reckless indifference to her federally protected rights.

## VII. THIRD CAUSE OF ACTION
### (Back Pay Under Title VII)

58. The allegations contained in paragraph No. 1 through No. 57 of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

59. The facts set forth in this Complaint constitute a violation of Plaintiff' rights under the Title VII of the Civil Rights Act of 1964; 42 U.S.C. §§'s 2000e *et seq.* due to her gender.

60. As a direct result of the unlawful actions of the Defendant, Plaintiff is entitled to an award for back pay under Title VII to be paid for the difference in wages, salary, commissions and fringe benefits that she would had earned as an API Team Leader compared to her present position at Pfizer; counted from the date when she was informed that she had not been selected to that position to the date that she is finally transferred to it.

61. Said amount is presently estimated at no less than $155,000, but it's subject to increasing, depending on the date that the jury trial takes place.

### VIII. FOURTH CAUSE OF ACTION
### (Transfer to API Team Leader Under Title VII)

62. The allegations contained in paragraph No. 1 through No. 61 of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

63. The facts set forth in this Complaint constitute a violation of Plaintiff's rights under the Title VII of the Civil

Rights Act of 1964; 42 U.S.C. §§'s 2000e *et seq*. due to her gender.

64. As a direct result of the unlawful actions of the Defendant, Plaintiff is entitled to be transferred to the position of API Team Leader at the current salary or pay rate.

## VIII. FIFTH CAUSE OF ACTION
### (Commonwealth Law No. 100)

65. The allegations contained in paragraph No. 1 through No. 64 of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

66. The facts set forth in this Complaint constitute gender discrimination at the workplace and thus are in violation of Commonwealth Law No. 100 of June 30, 1959 as amended, 29 L.P.R.A. §§'s 146 *et seq.*

67. Thus, Plaintiff is entitled to an award of no less than $500,000 under Law No. 100 for the pain, emotional distress and the loss of salary, wages, commissions and fringe benefits that she has suffered due to the Defendants actions.

68. In addition, the total amount that will be awarded as damages and which are requested in this Complaint under Federal and State law are subject to be doubled pursuant to 29 L.P.R.A. § 147(a).

## IX. SIXTH CAUSE OF ACTION
### (Commonwealth Law No. 69)

69. The allegations contained in paragraph No. 1 through No. 68 of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

70. The facts set forth in this Complaint constitute gender discrimination at the workplace and thus are in violation Commonwealth Law No. 69 of July 6, 1985, as amended, 29 L.P.R.A. §§'s 1321 *et seq.*

71. Thus, Plaintiff is entitled to an award of no less than $500,000 under Law No. 69 for the pain, emotional distress and the loss of salary, wages, commissions and fringe benefits that she has suffered due to the Defendants actions.

72. In addition, the total amount that will be awarded as damages and which are requested in this Complaint under Federal and State law are subject to be doubled pursuant to 29 L.P.R.A. § 1341.

**X. ATTORNEY FEES, COST AND PREJUDGMENT INTERESTS**

73. The allegations contained in paragraph No. 1 through No. 72 of this Complaint are incorporated by reference as if fully set forth herein by Plaintiff.

74. The Defendant is hereby liable to Plaintiff for all sums hereby requested as well as for all pre-judgment and post-judgment interest, costs and attorney fees pursuant to Title VII of the Civil Rights act of 1964 and 42 U.S.C. § 1988.

75. Recovery of attorney fees, costs incurred and interest accrued are also available under the Commonwealth laws invoked in this Complaint.

## XI. JURY TRIAL

76. Plaintiff hereby invokes her right to a jury trial pursuant to the Seventh Amendment of the United States Constitution for all issues so triable.

## XII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for this Honorable Court to enter Judgment imposing on Defendants the payment of a) a compensation of no less than $1,155,000.00 under Title VII of the Civil Rights Act of 1964; b) that Plaintiff be transferred to the position of API Team Leader at the current salary or pay rate; c) a compensation of no less than $500,000.00 under Commonwealth Law No. 100; d) an amount of no less than $500,000.00 under Commonwealth Law No. 69; e) that the aforementioned amounts be doubled pursuant to 29 L.P.R.A. § 147(a) and 29 L.P.R.A. § 1341; f) all with interest, attorney fees and the costs of the litigation, as well as any other remedy that this Honorable Court deems proper.

**RESPECTFULLY SUBMITTED** in Caguas, Puerto Rico on this 30th day of August of 2014.

**FRANCIS & GUEITS' LAW OFFICES**
PO Box 267

**COMPLAINT**
Wanda Otero Rivera v. Pfizer Pharmaceuticals,LLC

Caguas, PR 00726
Tel.(787)745-3100
Fax. (787) 745-3100
E-Mail: jgueits@fglawpr.com
cfrancis@fglawpr.com


**S/JOSÉ J. GUEITS-ORTIZ**

**JOSÉ J. GUEITS-ORTIZ**

U.S.D.C.-P.R. Bar No. 224704


**S/CHRISTIAN J. FRANCIS-MARTÍNEZ**

U.S.D.C.-P.R. Bar No. 227105